IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MICHAEL HENRY ANDERSON, | CV 17-00063-H-BMM-JTJ |
| | (CV 17-00070-H-BMM-JTJ) |
| Plaintiff, | (CV 18-00004-H-BMM-JTJ) |
| vs. | |
| | ORDER AND FINDINGS AND |
| DAN DELTEN, TOM SIMKINS, | RECOMMENDATIONS OF UNITED |
| DAN JOHNSON, and BEN BOULEY, | STATES MAGISTRATE JUDGE |
| Defendants. | |

Plaintiff Michael Anderson, a prisoner proceeding without counsel, filed

three actions which have been consolidated.  (Civil Action Nos. CV 17-00063-H-

BMM-JTJ, CV 17-00070-H-BMM-JTJ, and CV 18-00004-H-BMM-JTJ.)  He first

alleged that Defendants Dan Delten, Tom Simkins, and Dan Johnson were

deliberately indifferent to his safety when on February 22, 2017 they allegedly

disclosed his sex offender status and sexual orientation to other inmates resulting

in other inmates assaulting and harassing Mr. Anderson.  (Civil Action No. CV

17-00063, Doc. 12.)  In a consolidated action, CV-18-CV-04, Mr. Anderson

alleged Defendant Ben Bouley, his unit manager, also disclosed Mr. Anderson's

sex offender status, sexual orientation, and gender identity to other inmates and

disciplined him in retaliation for Mr. Anderson's alleged refusal to have sex with

1

UM Bouley.  (Civil Action No. 18-CV-04, Doc. 2.)

The Court issued an order directing Defendants to respond to the failure to protect claims in all three cases and the retaliation claim against UM Bouley. (Doc. 13.)

Defendants Simkins, Johnson, and Bouley waived service and filed an Answer on April 2, 2018.  (Doc. 21.)  Counsel for these Defendants, however, did not waive service, enter an appearance, or file an answer on behalf of Defendant Delten indicating that he could not locate a current or former Montana State Prison (MSP) employee with that name.  While the Court has the duty to serve a complaint that passes the statutory screening requirements, *see* 28 U.S.C. § 1915(d), a plaintiff proceeding in forma pauperis (IFP) still must provide accurate and sufficient information to effect service.  *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994)(*overruled on other grounds, Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)); *see also* Fed. R. Civ. P. 4.  When a plaintiff fails to provide the Court with accurate and sufficient information to effect service of the summons and complaint, it is appropriate for the Court to sua sponte dismiss the unserved defendant.  *Walker*, 14 F.3d at 1422.  Counsel for Defendants indicated in his February 15, 2018 Notice of Appearance that Defendant Delten could not be located (Doc. 16) and thereafter Mr. Anderson did not provide sufficient

information to serve Defendant Delten.  Defendant Delten should therefore be dismissed without prejudice.

Defendants Simkins, Johnson, and Bouley have filed a motion for summary judgment arguing that Mr. Anderson failed to exhaust his administrative remedies with regard to his failure to protect claims against Defendants Simkins, Johnson and Bouley.  (Doc. 33.)

The Court finds that Mr. Anderson failed to exhaust his administrative remedies regarding his failure to protect claims and those claims and Defendants Simkins and Johnson should be dismissed.  Mr. Anderson has also filed a document construed as a motion to compel which will be denied.

# I.  MOTION FOR SUMMARY JUDGMENT

## A.  Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact.  *Id.*  On summary judgment, all inferences should be

3

drawn in the light most favorable to the party opposing summary judgment. *Id*. at 159.

By notice provided on August 31, 2018 (Doc. 36), Mr. Anderson was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. Undisputed Facts[1]

Michael Anderson is an inmate of the Montana Department of Corrections (DOC) currently housed at the Montana State Prison (MSP). (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 1.) At all times relevant to the Complaints, Mr. Anderson was housed at MSP in High Security Unit 2 (HSU-2) where Defendant Bouley was Mr. Anderson's unit manager. (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 2-4.)

MSP has a grievance program which is available to address all issues that adversely affect an inmate "including, but not limited to, health care, staff conduct, written policy or procedures, and other standard grievance matters." The grievance program specifically allows inmates to grieve staff conduct.

---

[1]The facts are taken from Defendants' Statement of Undisputed Facts. (Doc. 35.) Since Mr. Anderson did not file a Statement of Disputed Facts, the facts as presented by Defendants are deemed admitted pursuant to Local Rule 56.1(d) unless otherwise disputed by the record.

(Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 6.)  The grievance

program excludes only two categories of complaints:  (1) those falling under the

jurisdiction of "outside entities not under the jurisdiction of the Department of

Corrections" and (2) "[c]lassification, disciplinary, and any other decision which is

subject to a separate appeal procedure or administrative review process."

(Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 7.)

The grievance program provides a "broad" "scope of available

administrative remedies" to "be applied on a case-by-case" basis so as to afford

grievants a "meaningful remedy to valid grievances."  The only remedy that may

be requested regarding staff conduct is an investigation.  (Defendants' Statement

of Undisputed Facts, Doc. 35 at ¶ 8.)  Except for emergency grievances, healthcare

grievances, certain staff conduct grievances, and policy request grievances, the

MSP grievance process consists of four steps:  (1) an informal resolution form

directed to the unit manager (or designee), (2) a formal grievance directed to the

Grievance Coordinator, (3) an appeal to the Warden, and (4) an appeal to the DOC

Director.  Grievances raising certain staff conduct issues and policy requests are

forwarded to the Warden at step two.  (Defendants' Statement of Undisputed

Facts, Doc. 35 at ¶ 10.)

Except in emergency situations, inmates must begin the grievance process

5

with an informal resolution form submitted to their assigned unit manager or designee.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 20.)  Inmates must present the informal resolution form to their unit manager within five working days of the action or omission that caused the complaint.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 21.)  An inmate who is unsatisfied with the response to an informal resolution may submit a formal grievance within five working days of the date he received the informal resolution response.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 22.)

Formal grievances are collected weekly by the grievance coordinator staff from a locked collection box in each housing unit.  Unit managers are not involved in collecting or processing formal grievances.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 24.)  Inmates may file a formal grievance even if their informal resolution is returned as not processed.  The grievance coordinators will consider a procedurally proper formal grievance even when the informal resolution form was not processed by the unit manager or other staff.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 25.)

Mr. Anderson was educated about the grievance program and its requirements as part of his PREA orientation on November 20, 2008.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 30.)  In addition, all

6

grievance procedures and policies are available to inmates in the MSP inmate library and grievance coordinators are available during regular working hours to answer questions on the grievance process at MSP.  If an inmate indicates to a grievance coordinator that they have a question on the grievance process, grievance coordinators attempt to answer their questions or provide copies of the applicable policies or forms.  Grievance coordinators assist inmates with appropriately filling out grievance forms and answer questions from housing unit case managers and sergeants about the process.  Case managers and sergeants are asked to direct inmates to the grievance office with questions they may have.  If a case manager, sergeant, or inmate were to indicate to the grievance coordinators that an inmate was so confused about the process to require a re-orientation, grievance coordinators offer that inmate the option of attending another orientation in their current housing unit.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶¶ 27, 28.)

Between November 19, 2008 and December 8, 2017, Mr. Anderson filed at least 29 formal grievances and more than 94 informal resolutions.  Of those, he appealed at least seven to the Director of the Department of Corrections, the final step of the grievance process.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 31.)

Mr. Anderson filled out an informal resolution form claiming that on

February 22, 2017, Officers Simkins and Johnson discussed his sexual orientation

and criminal history with other inmates.  He dated the form February 22, 2017.

The top of the form contains a notation that it was received by "SW" on

"2-24-17."  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 33.)  Mr.

Anderson incorrectly submitted the informal resolution on a formal grievance

form.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 34.)

UM Bouley received the form on April 3, 2017.  UM Bouley's practice is to

note on informal resolution forms the date he received the form.  Consistent with

that practice, he left the following notation on Mr. Anderson's informal resolution

form: "Received 4-3-17 Bouley."  (Defendants' Statement of Undisputed Facts,

Doc. 35 at ¶ 35.)

In response to Mr. Anderson's February 22, 2017 informal, UM Bouley

stated:  "This informal arrived way too late to process."  (Defendants' Statement of

Undisputed Facts, Doc. 35 at ¶ 36.)  UM Bouley returned the informal resolution

form to the unit sergeant, who provided it to Mr. Anderson.  Mr. Anderson signed

the form acknowledging his receipt. (Defendants' Statement of Undisputed Facts,

Doc. 35 at ¶ 37.)  The form expressly advised Mr. Anderson of the following:

"You have the right to appeal this response to the next level."  It also advised Mr.

8

Anderson that "YOUR APPEAL MUST BE SUBMITTED WITHIN FIVE WORKING DAYS OF RECEIPT OF THIS RESPONSE."  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 38.)  Neither Mr. Anderson's grievance file nor DOC's Offender Management Information System (OMIS) contain any formal grievance appealing the denial of Mr. Anderson's informal resolution against Officers Simkins and Johnson.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 39.)

Neither Mr. Anderson's grievance file, DOC's database (OMIS), nor the HSU-2 grievance log contain any formal grievances or informal resolutions in which Mr. Anderson complained that UM Bouley informed other inmates of Mr. Anderson's criminal history, sexual orientation, or gender identity.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 41.)  In a statement Mr. Anderson submitted in response to a disciplinary infraction issued in April 2017, he claimed UM Bouley was the person who initially told Officer Simkins about Mr. Anderson's criminal history.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 43.)

### C.  Analysis

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

9

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth,* 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the prisoner must produce evidence

10

demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate.  First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.*  "When rules are so confusing that no reasonable prisoner can use them, then they're no

longer available." *Id.* (internal quotation marks and alteration omitted).  However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning.  *Id.*  Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.  *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief.  *Id.* at 1860.  For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable.  *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Mr. Anderson alleges in his Complaint that Officers Simkins and Johnson

12

disclosed his criminal history and sexual orientation on February 22, 2017. (Doc.

12-2 at 2.)  Mr. Anderson sought informal resolution of this allegation on a form

he dated February 22, 2017. (Defendants' Statement of Undisputed Facts, Doc. 35

at ¶ 33.)  The top of the form has a notation stating it was received by someone

with the initials "SW" on February 24, 2017.  (Defendants' Statement of

Undisputed Facts, Doc. 35 at ¶ 33.)  UM Bouley, however, did not receive the

form until April 3, 2017.  (Defendants' Statement of Undisputed Facts, Doc. 35 at

¶ 35.)

There is no explanation in the record regarding why Mr. Anderson's

February 22, 2017 informal was marked received on February 24, 2017, but not

received by UM Bouley until April 3, 2017.  Nor is there any explanation as to

whom "SW" may be.  The Court notes that there are several informal grievance

forms in the record which were marked received by "SW."  Mr. Anderson

submitted an informal resolution form on September 5, 2017 which was marked

received by "SW" and was responded to by a Sgt. Weber.  (Doc. 35-7 at 253.)  Mr.

Anderson filed two other informals on February 22, 2017 which were also marked

by received by "SW" on February 24, 2017 and responded to by prison officials in

a timely manner.  (Docs. 35-7 at 273, 275.)  In addition, Mr. Anderson submitted

an informal on March 3, 2017 which was marked received by "SW" on March 6,

2017 and responded to on March 7, 2017.  (Doc. 35-7 at 274.)

Assuming the facts in the light most favorable to Mr. Anderson as the Court must at this stage of the proceedings, the Court finds that Mr. Anderson timely submitted an informal on February 22, 2017 regarding his failure to protect claims which was received by prison officials on February 24, 2017.  UM Bouley did not receive this informal until April 3, 2017 but the delay in UM Bouley's receipt of the February 22, 2017 informal was not caused by Mr. Anderson.

In *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010), the Ninth Circuit found that a federal inmate's failure to timely exhaust his administrative remedies was excused because he took reasonable and appropriate steps to exhaust his claim but was precluded from exhausting, not through his own fault but by a mistake made by a prison official.  In *Nunez*, a federal inmate submitted numerous grievance forms complaining about a strip search.  The Warden denied the grievance stating that the search was authorized by Program Statement 5500.09.  Nunez took reasonable and appropriate steps to obtain Program Statement 5500.09 filing a number of forms seeking to obtain the statement to no avail.  It was subsequently determined that Program Statement 5500.09 did not relate to strip searches and the Warden had been mistaken in his citation to that statement.  The Ninth Circuit found that the Warden's misstatement was an innocent mistake, but it "led Nunez

14

on an almost ten-month wild goose chase" and Mr. Nunez "made every effort to make full use of the prison grievance process but was stymied by the error." *Nunez*, 591 F.3d at 1226.  The Ninth Circuit held that the Warden's mistake rendered Mr. Nunez's administrative remedies effectively unavailable.

Here, the Court finds for purposes of this Order that the prison officials made a mistake with regard to the timeliness of Mr. Anderson's February 22, 2017 informal.  But unlike the *Nunez* case, the Court finds that this mistake did not render Mr. Anderson's administrative remedies "effectively unavailable" for two reasons.  First, the grievance policy provides, "If the inmate doesn't receive a response to his informal resolution within 25 working days, he may proceed by filing a formal grievance without informal response.  He must file the formal grievance within the next five working days."  (MSP 3.3.3 (III)(F)(4), Doc. 35-6 at 4.)  As such, Mr. Anderson's remedy when he did not receive a response to the February 22, 2017 informal was to file a formal grievance which he did not do. (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ 39.)

Secondly, Mr. Anderson had an available remedy to UM Bouley's denial of the informal resolution by filing a formal grievance.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶ ¶ 25.)  The form UM Bouley returned to Mr. Anderson on April 3, 2017 clearly stated that Mr. Anderson had the right to appeal

15

to the next level.  (Defendants' Statement of Undisputed Facts, Doc. 35 at ¶  38.)

It also advised him that he must do so within five working days.  (Defendants'

Statement of Undisputed Facts, Doc. 35 at ¶  38.)  Mr. Anderson signed the form

acknowledging his receipt of the written response.  (Defendants' Statement of

Undisputed Facts, Doc. 35 at ¶  37.)  Mr. Anderson's failure to file a formal

grievance, therefore, is a failure to exhaust his administrative remedies.

Accordingly, regardless of when Mr. Anderson filed the informal resolution

or whether UM Bouley correctly or incorrectly denied it on timeliness grounds,

Mr. Anderson failed to avail himself of an available means of contesting that

determination.  There is therefore no genuine dispute of material fact that Mr.

Anderson failed to exhaust his administrative remedies before bringing his failure

to protect claims.

Having found that Mr. Anderson did not fully exhaust his February 22,

2017 grievance as to Officers Smikins and Johnson, there is no need to evaluate

whether the February 22, 2017 was sufficient to exhaust Mr. Anderson's claims

against UM Bouley.  Further, there is insufficient evidence to find that Mr.

Anderson's statement in response to a disciplinary infraction in April 2017 was

sufficient to exhaust his claims.

Defendants' Motion for Summary Judgment should be granted as to all

16

failure to protect claims.

## II.  MOTION TO COMPEL

On October 15, 2018, Mr. Anderson filed a document indicating he was locked up in the hole and the prison lost all of his legal paperwork.  He sought an additional copy of Defendants' motion for summary judgment and supporting documents.  (Doc. 40.)  The court construed the filing as a motion for copies and granted that motion directing Defendants to serve Mr. Anderson with a second copy of their motion for summary judgment and supporting documents.  The Court also allowed Mr. Anderson until November 23, 2018 to file a response to Defendants' motion for summary judgment.  (Doc. 41.)

Instead of filing a response to Defendants' motion for summary judgment, Mr. Anderson filed a document containing one paragraph in which he complained that some of the documents provided by Defendants were blacked out.  He requested that Defendants be required to provide all documents without the redactions or to remove the state's documents from the discovery in the case. (Doc. 45.)

The filing has been construed as a motion to compel and as such it must be denied.  First, the parties were advised in the June 1, 2018 Scheduling Order that,

The Court will not consider motions to compel or other discovery

17

> disputes unless the moving party complies with Fed. R. Civ. P.
> 37(a)(1) ("The motion must include a certification that the movant
> has in good faith conferred or attempted to confer with the person or
> party failing to make disclosure or discovery in an effort to obtain it
> without court action.") and D. Mont. L.R. 26.3(c) ("The Court will
> deny any discovery motion unless the parties have conferred
> concerning all disputed issues before the motion is filed.").

(Scheduling Order, Doc. 25, at 6, ¶ I(I).)  Mr. Anderson has not complied with

Fed.R.Civ.P. 37(a)(1) or L.R. 26.3(c) in that he has not submitted a certification

that he conferred or attempted to confer with counsel for Defendants regarding

this issue.  On that grounds alone, the motion can be denied.

In addition, however, Defendants contend that they provided Mr. Anderson

with nearly his entire prison file, several years of his medical file, his entire

grievance file, and a detailed privilege log describing the reasons for redacting

information, most of which consisted of confidential materials irrelevant to his

claims or identifying information of inmates unconnected to this case.  (Doc. 46.)

Mr. Anderson has not made a sufficient showing that Defendants wrongfully

redacted information.  The motion will be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

Mr. Anderson's November 26, 2018 filing as construed as a motion to

compel (Doc. 45) is DENIED.

18

Further, the Court issues the following:

## RECOMMENDATIONS

Defendants' Motion for Summary Judgment (Doc. 33) should be

GRANTED and Mr. Anderson's failure to protect claims and Defendants Simkins,

Johnson, and Delton should be DISMISSED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations

within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure

to timely file written objections may bar a de novo determination by the district

judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 14th day of February, 2019.

　　　　　　　　　　　　　　*/s/ John Johnston*　　　　　　　
　　　　　　　　　　　　　　John Johnston
　　　　　　　　　　　　　　United States Magistrate Judge

---

[2]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Anderson is being served by mail, he is entitled an additional three days after the period would otherwise expire.